UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JESSIE JEROME LEE,

        Plaintiff,                      Case No. 2:15-cv-34

v.                                       Honorable Gordon J. Quist

DANIEL H. HEYNS, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Jessie Jerome Lee, a prisoner currently incarcerated at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants

MDOC Director Daniel H. Heyns, Psychiatrist Robert G. Niven, Social Worker Kristi Kangas, Warden Robert Napel, and Psychologist Sarah Miller.  In Plaintiff's complaint, he alleges that in 2004, while confined to the Wayne County Jail, he was assaulted by Joseph Swilling.  However, when the assault was investigated, Plaintiff was told that Swilling was not in the jail.  Plaintiff was subsequently misdiagnosed with schizophrenia.  Plaintiff claims that this misdiagnosis subjected him to inappropriate treatment from March of 2005 until May 25, 2010, which caused him to suffer from abdominal pain, fever, headaches, nausea, painful diarrhea, and constipation.

On May 25, 2010, Plaintiff was removed from his antipsychotic medication, which included Riperdal[1] and Prozac.  Plaintiff states that he has been diagnosed with Irritable Bowel Syndrome (IBS) and Crohn's disease, and that an emergency room doctor told him that it could have been caused by Plaintiff's use of antipsychotic medications.  On February 22, 2011, Plaintiff filed a lawsuit against Wayne County, Wayne County Jail, and the Department of Mental Health, asserting assault and malpractice.  On December 6, 2011, Plaintiff was discharged from the Michigan Department of Mental Health.

In April of 2012, Plaintiff was terminated from his job as a law library clerk at the Parnall Correctional Facility by Corrections Officer "R. R."  Plaintiff was aware that R. R. was having a sexual relationship with a prisoner "W. C."  Plaintiff states that W. C. threatened to harm Plaintiff if he told anyone about the affair, so Plaintiff informed Control Center staff of the threats.  Consequently, an order of protection was placed in Plaintiff's institutional file naming R. R. and W. C.  In April of 2012, Plaintiff was transferred to the Jackson Correctional Facility, and then to the Ojibway Correctional Facility (OCF) in June of 2013.  Sixty-three days later, inmate W. C. was

---

[1]The Court assumes that Plaintiff is referring to Risperdal.

transferred to OCF and Plaintiff was transferred to the Baraga Correctional Facility (AMF). However, after Plaintiff arrived at AMF, he was told that he could not stay there because it was a level V facility. Plaintiff was informed that he would be sent back to OCF. Plaintiff then experienced a panic attack, and was transferred to the Woodland Center Correctional Facility.[2]

On September 26, 2013, Plaintiff was given a Mental Health Panel Hearing because he complained that his antipsychotic medication was making him ill. Plaintiff states that the Panel Report, which was fabricated by Dr. Alicia Wasilewski, M.D., was given to the Panel Board and resulted in Plaintiff being forced to take the medications. Plaintiff was transferred from Woodland to the Handlon Correctional Facility, where he received another Panel Hearing on December 17, 2013. In February of 2014, Jay Choi, M.D. discontinued the Riperdal, but continued the Prozac.

On March 2, 2014, Plaintiff was transferred to MBP, where he was interviewed by Defendants Kangas and Niven. Plaintiff stated that he feared being harmed by inmate W. C., who was still confined at OCF, because the prisons are in "close proximity" and W.C. could have associates at MBP. Defendant Niven wanted to place Plaintiff back on his antipsychotic medications, but Plaintiff refused. Plaintiff stated that he wanted to withdraw his consent and be terminated from the Mental Health Program as provided for by state law. Plaintiff completed a form requesting termination of his admission, but Defendants Niven and Kangas "fabricated" a Panel Hearing Report stating that Plaintiff has maintained that he was assaulted at the Wayne County Jail in 2004 and that Wayne County Health Department staff drugged Plaintiff and misdiagnosed him as having schizophrenia in order to prevent him from filing charges and a civil suit within the

---

[2] The majority of prisoners at Woodland suffer from serious mental illnesses and cannot function adequately in a general prison population. http://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-215183--,00.html.

limitation period. The report also stated that Plaintiff continued to fear being harmed by inmate W. C. and other inmates. Plaintiff states that he presented his own evidence to the Panel Board Members, but they did not review it and found that Plaintiff was in need of forced involuntary administration of psychotropic medications. The Panel Board consisted of non-party psychiatrists.

On September 23, 2014, Defendant Kangas interviewed Plaintiff and discussed signing a consent form. Plaintiff refused, stating that his medications were still making him sick. Plaintiff again requested to withdraw his consent for mental health treatment. Plaintiff was given a tele-med interview with Defendant Niven, who tried to convince Plaintiff to sign the consent form. Plaintiff refused, asserting that everything in his mental health record was false. Defendant Niven refused to allow Plaintiff to withdraw from mental heath treatment.

On October 7, 2014, Plaintiff had another Panel Hearing before non-party psychiatrists. Plaintiff states that the Panel Hearing Report was again fabricated by Defendants Niven and Kangas, who falsely asserted that Plaintiff suffered from Paranoid Schizophrenia Personality Disorder and Depressive Disorder. The Panel Board determined that Plaintiff should continue to receive medications regardless of his lack of consent. On December 4, 2014, Plaintiff had a mild seizure. On December 5, 2014, Plaintiff met with Defendant Kangas. On December 18, 2014, Plaintiff had a tele-med conference with Defendant Niven, who refused to discontinue Plaintiff's Riperdal medication or to lower the dosage.

On December 30, 2014, Plaintiff had another Panel Hearing, during which false information was again presented by Defendants Kangas and Niven, including information about Plaintiff's history of psychotropic medications beginning at age 12. Plaintiff asked if Defendants had proof of this history, and Defendant Niven replied "No, but we need your permission to obtain

it." Plaintiff asserted that there was no information to be obtained. Panel Board Members again refused Plaintiff's right to terminate treatment, finding that Plaintiff was a danger to self or others.

Plaintiff asserts that Defendants violated his constitutional rights when they subjected him to a forced / involuntary commitment to mental health treatment and forced him to take psychotropic medications, despite the fact that these medications caused him to suffer side-effects. Plaintiff seeks damages and equitable relief.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that he has been subjected to involuntary mental health treatment, including being forced to take antipsychotic medications. As a result, Plaintiff claims to suffer from a variety of serious side-effects. The United States Supreme Court has held that:

> given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest.

*Washington v. Harper*, 494 U.S. 210, 227 (1990).

In a factually similar situation to the instant case, the District Court for the Eastern District of Michigan stated:

> A prisoner has a "liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). This right is not absolute; prison officials have an "obligation to provide prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution," *id.* at 225, and thus prison officials may administer psychotropic drugs to a prisoner against his will "if the inmate is dangerous to himself or others and

> the treatment is in the inmate's medical interest." *Id.* at 227. To comport with the Due Process Clause, the forced medication must be in the prisoner's medical interest, the treating physician's determination must be subject to review by an independent tribunal or panel, and the prisoner must be able to capably argue before the panel or tribunal that he does not need forced medication. *See Sullivan v. Flannigan,* 8 F.3d 591, 598 (7th Cir.1993) (discussing *Harper* ).

*Annabel v. Heyns*, 2014 WL 1207802, slip op. 5 -6 (E.D. Mich., Mar. 24, 2014).

Plaintiff has been diagnosed as having schizophrenia and has been treated over the years with antipsychotic drugs despite his claim that he does not require such treatment. However, it is clear from Plaintiff's recitation of the facts that his situation was presented to an independent panel of psychiatrists on multiple occasions at more than one facility, that Plaintiff was able to address the panel and present his own evidence, and that the panel agreed with the treating physician's plan of treatment. Therefore, Plaintiff's claims regarding his involuntary treatment fail to state a claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  May 8, 2015                                             /s/ Gordon J. Quist
                                                                                                GORDON J. QUIST
                                                                                      UNITED STATES DISTRICT JUDGE